**UNION INSURANCE COMPANY, (MUTUAL), Appellant,**

v.

**IOWA HARDWARE MUTUAL INSUR-ANCE COMPANY, Appellee.**

No. 53325.

Supreme Court of Iowa.

March 10, 1970.

Westfall, Laird, Burington, Bovard & Heiny, Mason City, for appellant.

Warren L. DeVries, Mason City, for appellee.

RAWLINGS, Justice.

This appeal involves an action in equity for declaratory judgment seeking a deter-

mination as to the obligation of plaintiff and defendant insurers under their respective "other insurance" automobile liability policies. Trial court held adverse to plaintiff, and it appeals. We reverse.

June 17, 1965, Doris I. Cook, while permissibly operating an automobile owned by Humboldt Motor Sales, struck a car driven by Charlotte Watts, causing injury to her and an occupant daughter, also damaging the Watts' vehicle. Resultant claims made are still pending.

At the time of the accident Doris I. Cook owned a Plymouth automobile with liabilty coverage uinder a policy issued by Union Insurance Company (Mutual) of Lincoln, Nebraska. Contemporaneously Humboldt Motor Sales had coverage under a policy issued by Iowa Hardware Mutual Insurance Company of Mason City, Iowa.

Part I of Cook's Union Insurance policy provides coverage for bodily injury and property damage liability. It also states, in material part: "If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.*" (Emphasis supplied)

The relevant portion of Iowa Hardware's policy held by Humboldt Sales likewise included coverage for bodily injury or property damage, and to the extent here relevant provides coverage for:

"(1) The named insured,

"(2) * * *

"(3) * * *

"(a) * * *

"(b) *any other person, but only if no other valid and collectible automobile lia-*

*bility insurance, either primary or excess,* with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, *is available to such person; * * *.*" (Emphasis supplied)

As indicated, supra, trial court adjudged plaintiff Union Insurance primarily liable, to the limits of its policy, imposing liability on defendant Iowa Hardware only after exhaustion of coverage provided by Union Insurance.

On appeal plaintiff urges, in substance, primary liability should be imposed on Iowa Hardware, or alternatively the policies be found mutually repugnant and liability prorated in proportion to coverage provided by the two insurers respectively.

I. An examination of the policies at hand discloses both plaintiff and defendant attempted to provide coverage only to the extent "other insurance" is unavailable. This means, if either policy had not existed the other insurer would alone have been liable. See Graves v. Traders & General Insurance Company, 252 La. 709, 214 So.2d 116, 117–118; Allstate Insurance Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.E.2d 436, 440; 8 Appleman, Insurance Law & Practice, Second Ed., section 4913; and The Law of Liability Insurance, by Rowland H. Long, section 22.08. But the presence of both compels an inquiry as to which insurer is primarily responsible, or whether both are proportionately obligated.

The myriad problems attendant upon "other insurance" clauses is not new, and the conflicting solutions adopted demonstrate a frustrating judicial attempt to resolve what appears to be an endless inter-industry semantic battle.

The confusion involved is probably best illustrated by merely referring to Annos. 76 A.L.R.2d 503; 69 A.L.R.2d 1122; 46 A.L.R.2d 1163; and 38 Minn.L.Rev. 838.

II. Although other appellate tribunals have dealt with the precise question here involved, it has never before been squarely presented to this court.

Truck Insurance Exchange v. Maryland Casualty Co., Iowa, 167 N.W.2d 163, involved "other insurance" and we held, in an action for contribution, where the policy issued by each of two competing insurers provided repugnant like "excess" coverage, both must be held liable on a pro rata basis.

In so holding this court prefatorily also stated, 167 N.W.2d loc. cit. 164: "As a general rule, when two insurance companies provide insurance on the same loss, the question of their respective insurance obligations is determined by a construction of the language used by the respective insurers and not upon any arbitrary rule or circumstance."

So our task is to determine whether the policy provisions before us, though dissimilar, are mutually repugnant, or can be harmonized by judicial construction.

III. Research discloses the case of Hardware Deal. Mut. F. Ins. Co. v. Farmers Ins. Exch., Tex., 444 S.W.2d 583, is so factually akin to the case at bar, and reasoning of the court so persuasive, we adoptively restate it at length with some paraphrasing and adaptive minor revisions.

The development of "other insurance" clauses began in the area of property insurance. Insurers included provisions in their policies designed to avoid an insured's self-injury temptation, or fraud by overinsuring. Such limitations of liability met with approval. See Concurrent Coverage in Automobile Liability Insurance, 65 Colum.L.Rev. 319, 320; Note, 38 Minn.L. Rev. 838, 840. In the automobile field, however, "other insurance" provisions have generally been treated differently, because moral hazards of self-injury are relatively nonexistent, and by reason of the more recent trend toward enlarging coverage to include other insureds. But in the course of this expansion process many insurers have attempted to hedge their coverage by adoption of various "escape" provisions. Resultantly there has been a growing tendency on the part of insurers to write policies which seek both to expand, yet limit their coverage.

With regard to automobiles, three basic types of "other insurance" approaches have developed. (1) A pro rata clause restricting liability upon concurring insurers to an apportionment basis. (2) An excess clause restricting liability upon an insurer to excess coverage after another insurer has paid up to its policy limits. (3) An escape clause avoiding all liability in event of other insurance. Such provisions, standing alone, ordinarily present no problem and are given effect when only one of the concurrent policies contains an "other insurance" clause. Controversies do arise, however, when more than one policy covers the same insured and each has an "other insurance" clause restricting its liability because of existing separate coverage.

Conflicts between concurrent insurance provisions have arisen in a number of areas. They are classified in 7 Am.Jur.2d, Automobile Insurance, section 202, page 544. With some rearrangement and editing, they are thus grouped: (1) One policy contains an excess clause, the other a pro rata clause, see 76 A.L.R.2d 512; (2) one policy contains a non-liability or escape clause, the other a pro rata clause, see 46 A.L.R.2d 1167; (3) both policies contain an excess clause, see 69 A.L.R.2d 1122; (4) one policy contains an excess clause, the other a non-liability or escape clause, see 46 A.L.R. 2d 1165; (5) one policy contains what has been termed a specific escape clause which specifies the kind of "other insurance", existence of which will relieve the former insurer of liability, see 46 A.L.R.2d 1168. Note also 8 Blashfield, Automobile Law and Practice, Third Ed., sections 345.10–345.14. Our problem seems to focus upon the last two types.

Courts have adopted various avenues of approach in an effort to harmonize these apparently conflicting provisions. At first the "prior-in-time" theory was applied by which liability was imposed upon the insurer whose policy was earliest in time. New Amsterdam Cas. Co. v. Hartford Acc. & Indem. Co., (6 Cir.), 108 F.2d 653, and 38 Minn.L.Rev. 838, 845. That method was soon criticized as arbitrary, being one of convenience rather than reason, and because the time of coverage is not as significant as the vital fact that coverage existed when the accident occurred. Most courts have abandoned this method. Other tribunals have resolved such cases by determining identity of the primary tort-feasor and directness of his relationship to the insurer. Liability under such method rested upon the insurer whose named insured, as distinguished from an additional insured, is the tort-feasor. This too has been declared arbitrary and rejected by most courts. Zurich General Accident & Liability Ins. Co. v. Clamor, (7 Cir.), 124 F.2d 717, and 38 Minn.L.Rev. 838, 843. It would deny coverage for an unnamed or additional insured even though the insurer intended to protect him as an insured. Another method employed in an effort to reconcile double insurance clauses has been that of determining which of two "other insurance" provisions is the more specific in its restriction, then giving it effect over the general. Trinity Universal Ins. Co. v. General Acc., F. & L. A. Corp., 138 Ohio St. 488, 35 N.E.2d 836, and 38 Minn.L.Rev. 838, 841. We disclaim any of these rationales in that they are to us unrealistic, artificial, or produce arbitrary results.

IV. With regard to the foregoing, escape clauses were once written in general terms. In the face of that situation some courts concluded, as aforesaid, a general escape clause must yield to the more specific excess clause. Hence, that policy containing a general escape clause was usually held primarily liable. See 8 Appleman, Insurance Law & Practice, Second Ed., section 4914.

The above rule was applied in these cases: Zurich General Accident & Liability Ins. Co. v. Clamor, supra; Michigan Alkali Co. v. Bankers Indemnity Ins. Co., (2d Cir.), 103 F.2d 345; Continental Casualty Co. v. Curtis Pub. Co., (3 Cir.), 94 F.2d 710; New Amsterdam Cas. Co. v. Certain Underwriters, 34 Ill.2d 424, 216 N.E.2d 665; Zurich Insurance Co. v. Continental Casualty Co., 239 Md. 421, 212 A.2d 96; Commercial Cas. Ins. Co. v. Hartford Acc. & Indem. Co., 190 Minn. 528, 252 N.W. 434, 253 N.W. 888; Travelers Indemnity Co. v. State Automobile Ins. Co., 67 Ohio App. 457, 37 N.E.2d 198; Grasberger v. Liebert & Obert, 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201. In Zurich Insurance Co. v. New Amsterdam Casualty Co., 117 Ga. App. 426, 160 S.E.2d 603, the test was applied in a case involving two excess clauses. See also Truck Insurance Exchange v. Maryland Casualty Co., supra.

Faced with those decisions which cast primary liability upon that policy containing the more general clause, many insurers redrafted their policies in an attempt to out-specific the specific excess provisions in others. The general escape clause used in the cases cited above was ordinarily phrased to exclude coverage if the insured "is also covered by other valid and collectible insurance." In the instant case, however, Iowa Hardware's escape clause was not general, being specific in that it afforded coverage to "any other person, but only if no other valid and collectible automobile liability insurance, *either primary or excess* * * * is available to such person; * * *." (Emphasis supplied). We are thus confronted with a case involving an "excess" clause in the Union Insurance policy, and Iowa Hardware's so-called specific escape provision.

Some cases have given controlling force to the specific escape clause over that providing excess coverage. United States Fidelity & Guaranty Co. v. Dixie Auto Ins. Co. (D.C.), 292 F.Supp. 554, aff'd (5 Cir.), 403 F.2d 717; Indiana Lumbermens Mutual Insurance Co. v. Mitchell (D.C.), 285 F.

Supp. 969, aff'd (7 Cir.), 409 F.2d 392; Continental Cas. Co. v. Weekes, Fla., 74 So. 2d 367, 46 A.L.R.2d 1159; Government Employees Ins. Co. v. Globe Indemnity Co., Ky., 415 S.W.2d 581; Allstate Insurance Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.E.2d 436; Government Emp. Ins. Co. v. Lumbermens Mut. Cas. Co., 269 N.C. 354, 152 S.E.2d 445; Faltersack v. Vanden Boogaard, 39 Wis.2d 64, 158 N.W.2d 322. In Government Employees Ins. Co. v. Globe Indemnity Co., supra, the Kentucky court, by giving effect to a specific escape clause, excused that insurer from liability, and distinguished its earlier decisions which reached an opposite result under policies which included only the general escape clause. Other cases have also accorded controlling force to a specific escape clause, though the conflict was with other than "excess". See Continental Casualty Co. v. Suttenfield, (5 Cir.), 236 F.2d 433. This result has apparently been reached via a strict construction of overlapping clauses, or by treating the "escape" provision as a condition to coverage coming into being.

In Federal Insurance Company v. Prestemon, 278 Minn. 218, 153 N.W.2d 429, the court held a consenting car owner's insurer primarily liable by according full effect to the permissive driver's "excess" coverage, none to the owner insurer's "specific escape" clause. This solution, once favored in Louisiana, has since been rejected. See Graves v. Traders & General Insurance Company, La.App., 200 So.2d 67, aff'd, 252 La. 709, 214 So.2d 116.

V. Demonstrably the many methods employed in an attempt to resolve the problem of double coverage through conflicting clauses have produced nothing less than utter confusion. Each of the foregoing approaches has been described by someone as a mechanical application of some arbitrary test. As previously disclosed, the prior-in-time, and search for a primary tort-feasor, have been largely rejected. The fixing of liability by determining which of two clauses is the more specific is no better. Moreover, it encourages the continuing draftsmanship battle by which insurers seek still more specific policy terms, and the end is not in sight. 65 Colum.L.Rev. 319, 322.

In effect Union Insurance says, because of Iowa Hardware's policy it owes only excess insurance, or at most only a pro rata share. By reason of the Union Insurance policy, Iowa Hardware takes the position it owes nothing. To solve the problem by picking up one policy, and reading it with a result which would be opposite to that reached if the other policy were first in order, is at best a pseudo-solution in that it only aggravates a circular riddle.

Furthermore, we seriously doubt the capacity of courts to make valid legal determinations of policy intent by measuring actuarial risks and a correspondent allocation of premiums.

It is our belief, this case can be more equitably resolved by a return to settled principles which give dominant consideration to rights of the insured who should have coverage no less than if she had been protected by only one of the policies. This approach is predicated on the principle that policies should be construed liberally in favor of the rights of an insured, strictly against the insurer. See State Auto. & Cas. Under. By Automobile Underwriters v. Hartford Acc. & Ind. Co., Iowa, 166 N.W.2d 761, 763; General Casualty Co. of Wisconsin v. Hines, Iowa, 156 N.W.2d 118, 122; Goodsell v. State Auto and Cas. Underwriters, Iowa, 153 N.W.2d 458, 461; and Youngwirth v. State Farm Mutual Auto Ins. Co., 258 Iowa 974, 978–979, 140 N.W.2d 881. The sense of avoidance logic, employed by insurers against each other, when applied against the insured, would lead to a conclusion that the latter, though protected by two policies, actually has none. This would be an unconscionable result. With the issue thus sharply drawn between two or more insurers, the insured is actually

left helpless on the sidelines. See Graves v. Traders & General Insurance Company, La.App., 200 So.2d 67, 77, aff'd 252 La. 709, 214 So.2d 116, 117–118, and Federal Ins. Co. v. Atlantic National Ins. Co., 25 N.Y.2d 71, 302 N.Y.S.2d 769, 771–772, 250 N.E.2d 193. Furthermore, under any such theory the insured loses benefit of the rule, supra, requiring that policies be construed strictly against the insurer.

■ In Continental Cas. Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 the question was as to coverage of an insured. Despite policy provisions the court there held 254 S.W.2d loc. cit. 763: " * * * the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than *one which is not itself unreasonable."* (Emphasis supplied). Although this case is not here controlling, it states what to us is a sounder means by which to justly resolve issues between double insurers. We, therefore, shall follow this rule: When the insured has coverage from either of two policies, but for the other, and each contains a provision reasonably subject to a construction that it conflicts with a provision in other concurrent insurance, there is a conflict. It is thus evident that when the provisions in Union Insurance and Iowa Hardware's policies come face to face, they are conflicting and subject to construction, under the principles set forth above. See in this regard Graves v. Traders & General Insurance Company, supra.

■ VI. As already indicated, we are satisfied, a repugnancy between relative provisions of two policies is more equitably resolved by ignoring the two offending clauses. Resultantly Iowa Hardware's policy, minus its escape clause, covers the insured, while the Union Insurance policy, minus its excess clause, provides like coverage. The insured is thus protected by both insurers which is a reasonable result since each wrote expanded coverage policies

which must have been intended to reach her, and this problem of double insurance was "involuntarily thrust upon the insured through the operation of another's insurance contract." See 38 Minn.L.Rev. 838, 851.

Other cases supporting this view are, Employers Mutual Casualty Co. v. MFA Mutual Ins. Co., (10 Cir.), 384 F.2d 111; Gilkey v. Andrew Weir Insurance Company, (9 Cir.), 291 F.2d 132; Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., (9 Cir.), 195 F.2d 958; Peerless Casualty Co. v. Continental Casualty Co., 144 Cal.App.2d 617, 301 P.2d 602; Graves v. Traders & General Insurance Company, supra; Cotton v. Associated Indemnity Corporation, La.App., 200 So.2d 78, writ ref. 251 La. 71, 203 So.2d 88, State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co., La. App., 184 So.2d 750; Lincombe v. State Farm Mutual Automobile Ins. Co., La.App., 166 So.2d 920; Sparling v. Allstate Insurance Co., Or., 439 P.2d 616. In United Services Auto. Ass'n v. Hartford Acc. & Ind. Co., Tenn., 414 S.W.2d 836, the court, in holding clauses of polices creating a double insurance problem accorded proportionate protection, said, 414 S.W.2d loc. cit. 840: "It is entirely clear that the general insuring agreement of both policies with which we are here concerned afford coverage in the instant case to the assured, * * *. Under the authorities urged upon us, it seems inescapable that the rights of the assured become badly obscured, if not defeated, by the contractual contest engaged in by casualty insurers."

And at page 841, of 414 S.W.2d is found this statement: "If one starts with United's policy and attempts to determine if the Hartford policy constitutes other valid and collectible insurance, one can only use the terms contained in Hartford's policy to determine if it is other valid and collectible insurance and, under the terms of Hartford's policy, it is not. If one starts with Hartford's policy and attempts to determine if United's policy is other valid and collectible insurance, one must consider the

terms of United's policy, and can only reach the conclusion that under the terms of United's policy, it is not other valid and collectible insurance. Therefore, both policies would appear to provide coverage.

"It seems to us that the only reasonable result to be reached is a proration between the two insurance companies in proportion to the amount of insurance provided by their respective policies."

Iowa Hardware's limit of liability as to an unnamed insured, is the minimum specified in the financial responsibility law of the automobile garaging state. The Union Insurance limit of liability is the same. That means the insured in this case is entitled to insurance coverage, within the specified limits, by both Iowa Hardware and Union Insurance.

Under existing circumstances liability coverage, if any, must be prorated equally between plaintiff and defendant, within the combined limits. By the same token both are obligated to defend the insured in connection with any action arising out of the June 17, 1965, accident.

In all fairness it should be noted the trial court inferentially looked with favor upon a pro rata obligation on the part of both Iowa Hardware Mutual Insurance Company and Union Insurance Company (Mutual), but understandably concluded that approach should await a decision by this court. Furthermore, at time the decree was here entered our opinion in Truck Insurance Exchange v. Maryland Casualty Co., supra, had not been issued.

We reverse and remand for entry of a decree consistent with this opinion. Costs on this appeal are taxed in equal part to plaintiff and defendant.

Reversed and remanded with instructions.

All Justices concur, except MASON and UHLENHOPP, JJ., who take no part.