**MOTOR CLUB OF IOWA INSURANCE COMPANY, Appellant,**

**v.**

**IOWA MUTUAL INSURANCE COMPANY, Appellee.**

No. 92–1966.

Supreme Court of Iowa.

Nov. 24, 1993.

As Amended Dec. 7, 1993.

Donald H. Gloe of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellant.

William C. Fuerste and Michael J. Shubatt of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

Plaintiff Motor Club of Iowa Insurance Company (Motor Club) appeals from a declaratory judgment that ruled it was liable for the entire settlement amount of an underinsured motorist (UIM) claim of one of its additional insureds, Randy Luzum. We reverse and remand.

I. *Background facts and proceedings.* Randy Luzum suffered injuries while riding as a passenger in an underinsured motor vehicle that he did not own and that was not named or listed in any policy in which Randy had an interest. Because the proceeds from the insurance of the owner of the car in which he was riding failed to fulfill a substantial portion of his damages, Randy filed underinsured motorist claims against defendant Iowa Mutual Insurance Company (Iowa Mutual), with whom he held his personal automobile policy on which he was a named insured, and plaintiff Motor Club, with whom his father, Paul Luzum, held a family auto policy. Randy was a member of his father's household.

Both the Iowa Mutual and Motor Club policies provided underinsured motorist coverage, and each had limits covering losses well over the $90,000 amount for which the two companies settled Randy's UIM claim. Each insurer contributed $45,000 to the settlement and reserved their right to have the court determine their respective ultimate responsibility for the settlement sum.

Plaintiff Motor Club and defendant Iowa Mutual then brought this declaratory judgment action under Iowa Code chapter 678 (1991) to determine the liability of the two insurers for the $90,000 settlement.

The dispute between the two insurers involved the proper interpretation of their policies with respect to this issue. The policies both contained "other insurance" provisions, clauses with which an insurer attempts to determine the appropriate amount it must pay when the insured makes claims against it and other policies of other insurers covering the same loss.

Defendant Iowa Mutual's "other insurance" provision was as follows:

OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide *for a vehicle you do not own* shall be excess over any other collectible insurance.

(Emphasis added.)

Plaintiff Motor Club's "other insurance" provision stated:

Other insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this Part exceeds the sum of the applicable limits of liability of all such other insurance.

With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this Part for a greater proportion of the applicable limit of liability of this Part than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

Subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by

this Part, the company shall not be liable under this Part for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss.

In another clause, Motor Club's policy stated that the term "uninsured automobile" in the above language applied to underinsured automobiles as well.

The district court concluded that Iowa Mutual's "other insurance" clause applied to Randy's loss as an "excess" clause, making Iowa Mutual liable to Randy only if the other insurance failed to satisfy his claim.

The court then noted that Motor Club's "other insurance" provision contained an ambiguity with respect to Randy's coverage. On the one hand, the policy appeared to afford Randy only "excess" coverage in an accident in which he suffered an injury in a car not owned by the insured. On the other hand, however, the policy provided "pro rata" coverage if an underinsured vehicle caused his injury. Therefore, because both the "excess" and "pro rata" clauses appeared to apply, the court held that it would construe the ambiguity against Motor Club and in favor of the insured, Randy. This would require that effect be given to the second paragraph of the "other insurance" provision, making Motor Club's coverage pro rata as opposed to excess.

Reasoning that an "excess" clause provides coverage only to the extent that the "pro rata" clause of a competing policy fails to satisfy the claim, the district court held plaintiff Motor Club liable for the entirety of Randy's $90,000 claim because that amount did not exceed its $300,000 UIM policy limit.

■ II. *The Iowa Mutual policy.* Motor Club argues that the trial court erred in applying Iowa Mutual's "other insurance" provision as an excess clause, claiming that the "excess" clause of Iowa Mutual's policy is ambiguous. The trial court disagreed, concluding that because this case involved a vehicle that Randy Luzum did not own, Randy should receive proceeds under the Iowa Mutual policy only as excess to any other

collectible insurance. We agree with the trial court.

■ Ambiguity exists in a policy only if the terms of the policy create a genuine uncertainty as to which one of two or more meanings is the proper one. *A.Y. McDonald Indus., Inc. v. Insurance Co. N. Am.,* 475 N.W.2d 607, 618–19 (Iowa 1991). A mere disagreement on the part of the parties as to the meaning of the policy does not automatically establish an ambiguity. *Id.* at 619. In *A.Y. McDonald,* for instance, we addressed the ambiguities arising out of the term "damages" as contained in comprehensive general liability policies. *Id.*

We find no ambiguity in this provision of Iowa Mutual's policy. The first sentence of Iowa Mutual's "other insurance" provision generally gave pro rata coverage with respect to any other insurance the insured may collect. The second sentence specifically denies this pro rata coverage, however, in instances in which the insured is involved with a vehicle that the insured does not own. In those instances, Iowa Mutual will provide coverage only after the insured exhausts his recovery from any other collectible insurance. The second sentence clearly controls in this case. Because Randy's claim involves a vehicle he does not own, Iowa Mutual will provide coverage for his UIM claim on an excess basis.

■ III. *The Motor Club policy.* Motor Club next argues that the trial court erred in concluding that its "other insurance" provision contains an ambiguity regarding whether its "pro rata" or "excess" language applies in this case. Motor Club contends that no ambiguity exists and that therefore the trial court had no basis on which to construe an ambiguity against Motor Club and conclude that Motor Club's pro rata coverage controlled. We agree.

The Motor Club policy contains three paragraphs. The third paragraph applies "[s]ubject to the foregoing paragraphs." Because we hold that the first paragraph applies, we will not address the third paragraph further.

The key to understanding which Motor Club policy provision controls lies in under-

standing the policy's use of the term "other similar insurance."

The first paragraph of Motor Club's "other insurance" provision states:

> With respect to bodily injury to an insured *while occupying an automobile not owned by the named insured* the insurance hereunder shall apply only as excess insurance over any *other similar insurance* available to such occupant....

(Emphasis added.) Here, Randy suffered his injuries while occupying an automobile not owned by the named insured, namely, his father. Because the other insurance in this case is the excess stipulation of the Iowa Mutual policy, it is "other similar insurance" as to Motor Club's excess stipulation. *See McClure v. Employers Mut. Cas. Co.*, 238 N.W.2d 321, 328 (Iowa 1976).

The next paragraph of the Motor Club "other insurance" provision is a pro rata stipulation and states:

> With respect to bodily injury to an insured *while occupying* or through being struck by an *[underinsured] automobile*, if such insured is *a named insured under other similar insurance* available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this Part for a greater proportion of the applicable limits of liability of this Part than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

(Emphasis added.) We agree with the trial court's conclusion that Randy is an "insured" who incurred bodily injury "while occupying ... an [underinsured] automobile." We disagree, however, with its conclusion that he is "a named insured *under other similar insurance available to him.*" The trial court believed that merely because Randy is a named insured under the Iowa Mutual policy, the Iowa Mutual policy is "similar insurance available to him." This was an understandable conclusion, but it was incorrect. As we have noted above, the Iowa Mutual policy operates as excess insurance for Randy under the facts of this case. Therefore, the pro rata clause in the second paragraph of Motor Club's "other insurance" provision does not apply because, as we held in *McClure*, "the policy with the excess stipulation [here, Iowa Mutual's] is *not* 'other similar insurance' as to [Motor Club's] pro rata stipulation." *McClure*, 238 N.W.2d at 328.[1]

We are thus left with the first paragraph, or the excess stipulation, standing. It controls here as to Motor Club's coverage. We must now resolve the conflict between that excess clause and Iowa Mutual's excess clause.

■ **IV.** *Repugnancy and apportionment.* We are faced with "mutually repugnant" excess clauses; therefore, each company is obligated to share in the cost of the settlement. *Truck Ins. Exch. v. Maryland Cas. Co.*, 167 N.W.2d 163, 164–65 (Iowa 1969). This liability must be prorated between plaintiff Motor Club and defendant Iowa Mutual within their combined UIM lim-

---

1. The difficulty in this case arises out of the interpretation of the operation of the term "other similar insurance." The parties all agree that the excess stipulation of one insurer will prevail over the pro rata stipulation of another. This rule led the trial court to conclude that both the excess and pro rata stipulations of the Motor Club policy applied, creating an ambiguity in this case. The explanation of the rule, however, demonstrates that the ambiguity is illusory. The excess stipulation of the first insurer trumps the pro rata stipulation of the second insurer because the pro rata stipulation, when pitted against an excess clause, has no "other similar insurance" with which it can share. Therefore, a pro rata clause that applies only when "other similar insurance" is available never applies against an excess clause.

We recognize that this reasoning seems to another "frustrating judicial attempt to resolve what appears to be an endless interindustry semantic battle." *Grinnell Mut. Reins. v. Globe Am. Cas.*, 426 N.W.2d 635, 637 (Iowa 1988) (quoting *Union Ins. Co. v. Iowa Hardware Mut. Ins. Co.*, 175 N.W.2d 413, 414 (Iowa 1970)). Nevertheless, insurance companies must include "other insurance" clauses to ensure that when an insured makes claims on multiple policies, the liability attaching to the different insurers can be apportioned in a fair and rational fashion. This unfortunately entails a certain level of complexity because of the varying types of policies that may cover a single claim. Our hope is to develop a consistent set of interpretive principles so that those involved in future disputes may apply those principles without having to resort to litigation.

638

its. *AID Ins. Co. v. United Fire & Cas. Co.,* 445 N.W.2d 767, 770 (Iowa 1989) (citing *Union Ins. Co. (Mut.) v. Iowa Hardware Mut. Ins. Co.,* 175 N.W.2d 413, 418–19 (Iowa 1970)).

As applied in Randy's case, Motor Club's policy has a limit of $300,000 and Iowa Mutual has a limit of $100,000. Thus the combined coverage is $400,000. Randy's damages total $90,000. Therefore, Motor Club's liability is $67,500, or three-fourths of $90,000, and Iowa Mutual's is $22,500, or one-fourth of $90,000. Because the parties each contributed $45,000 to the settlement of Randy's claims, the district court should enter a judgment for $22,500 in favor of Iowa Mutual against Motor Club. Indeed, this was an alternative remedy sought by Motor Club.

V. *Disposition.* We have considered the parties' other contentions and find them without merit or unnecessary to discuss. We conclude that the trial court erred in holding Motor Club solely liable for Randy Luzum's injuries. We reverse the holding of the trial court and remand the case for judgment consistent with this opinion. Costs on appeal shall be taxed one-half to each party.

**REVERSED AND REMANDED.**