## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *v.* UNIVERSAL UNDERWRITERS INSURANCE COMPANY ET AL.

[No. 112, September Term, 1973.]

*Decided December 12, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Robert K. Nead* for appellant.

*Delverne A. Dressel,* with whom were *Emanuel H. Horn* and *Dickerson, Nice, Sokol & Horn* on the brief, for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

On 19 March 1969 the Reverend Eugene B. Ruane was driving a new Chevrolet automobile owned by The Park Circle Motor Company. Since he had been considering the purchase of it he had been allowed to take it out for a trial run. While so occupied he collided with an automobile owned and operated by Leah Ida Friedman who thereafter sued both the owner (Park Circle) and the driver (Ruane). The owner was insured by the appellee (Universal), the driver by the appellant (State Farm). Universal refused to defend Ruane saying its policy affords him no coverage. Since State Farm felt the same way about its policy it sought a declaratory judgment. The trial judge, Carter, J., decided Universal's policy, in these circumstances, afforded no protection to Ruane and that Universal was under no obligation to defend him. State Farm has appealed.

Judge Carter filed with his order declaring the rights and duties of the parties a comprehensive and well-reasoned opinion which we adopt as the opinion of this Court. The reporter is directed to print it in the report of this case.

*Judgment affirmed.*
*Costs to be paid by the appellant.*

## MEMORANDUM OPINION
## OF JUDGE JOSEPH L. CARTER

State Farm Mutual Automobile Insurance Company, hereinafter referred to as "State Farm," has brought this suit seeking a declaration of its rights and obligations under an automobile liability policy and the responsibilities of Universal Underwriters Insurance Company, hereinafter referred to as "Universal," which issued a Garage Liability Policy, to the Park Circle Motor Company (Park Circle). Included as parties are the Reverend Eugene B. Ruane (Ruane), the Named Insured in the State Farm policy, and Leah Ida Friedman, who alleges she was injured in an automobile collision on March 19, 1969, due to the negligence of Ruane while "test driving" an automobile owned by Park Circle.

By way of additional background, the agreed facts disclosed the following: on March 19, 1969, Ruane drove his 1964 Ford automobile to Park Circle where he intended to negotiate the purchase of a new model automobile. As he wished to "test drive" a 1969 automobile, Park Circle loaned him an automobile to be returned on the same date. It was this automobile Ruane was driving at the time of the collision, which occurred at approximately 5:10 p.m. There was neither a consideration paid for the use of the 1969 automobile nor any rental agreement between Ruane and Park Circle. It was agreed that Ruane was not the agent, servant or employee of Park Circle at the time he took temporary possession of the automobile or at any time while he was "test driving" the automobile. It is also agreed that State Farm's policy contained coverage limits of at least those required under the Motor Vehicle Financial Responsibility Law on the date of the accident.

As a result of the aforementioned collision, Leah Ida Friedman has instituted suit against Park Circle and Ruane in the Superior Court of Baltimore City and Park Circle has instituted suit against Ruane seeking recovery of damages to the 1969 automobile. This latter suit was initially filed in the People's Court of Baltimore City and resulted in a judgment on June 25, 1970, from which judgment an appeal has been filed on behalf of Ruane which is presently pending in the Baltimore City Court.

State Farm by this proceeding specifically asks the court to determine, with respect to the claims filed as a result of the automobile accident, whether its policy or that of Universal affords primary coverage and which insurance company owes a defense to Ruane. State Farm has abandoned its contention in the petition that its policy does not afford coverage to its insured, Ruane, in connection with the claim of Park Circle for damage to its automobile.

In resolving this controversy, the terms and provisions of each insurance policy must be examined. The Court of Appeals has held, in interpreting insurance contracts, "the words are to be given their customary and normal meaning."

*State Farm Mutual Automobile Insurance Co. v. Treas*, 254 Md. 615, 619, 255 A. 2d 296 (1969).

State Farm's policy provides coverage to its named insured, Ruane, for bodily injury and property damage liability "caused by accident arising out of the ownership, maintenance or use . . . of the owned automobile," which is described as the 1964 Ford automobile previously mentioned. Its policy extends coverage to its named insured, for the same premium, while its insured is driving a "temporary substitute automobile" or a "non-owned" automobile. With respect to either, its policy provides:

"14. *Other Insurance.*

"All of the aforegoing provisions and all coverages are subject to the following:

". . . (b) The insurance with respect to a temporary substitute automobile, a trailer and a non-owned automobile shall be excess over other collectible insurance."

It is not contended by State Farm its policy does not extend coverage to Ruane while he was driving the 1969 automobile, but it is urged that any insurance afforded by it would be excess over other collectible insurance and that Universal's policy is primary and it would have the obligation to defend him in any proceedings.

The policy of insurance issued to Park Circle by Universal provided:

"*II Garage Liability*

*Coverage G — Bodily Injury Liability*

*Coverage H — Property Damage Liability*

. . . pay on behalf of the *insured* all sums which the insured shall become legally obligated to pay as *damages* because of *G. Bodily injury or H. property damage to which this insurance applies,* caused by *occurrence* and arising out of *garage operations,* including only the *automobile hazard* for which insurance is afforded as indicated in the schedule . . . ."

The policy by its terms, further provided:

"*V. Persons Insured*

Each of the following is an *insured* under this insurance to the extent set forth below:

Under the Garage Bodily Injury and Property Damage Liability Coverages:

(1) the *named insured:*

(3) with respect to the *automobile hazard:*

... (b) Any other person while actually using an automobile covered by this policy with the permission of the named insured, provided that such other person (a) has no automobile liability insurance policy of his (her) own, either primary or excess, or (b) is not included in 'Persons Insured' or 'Definition of Insured' in any other insurance policy, either primary or excess. Insurance afforded by this sub-paragraph (c) shall not exceed the minimum limits of liability specified in the Financial Responsibility Law of the state in which the accident occurs. However, if such person has another policy available but said other policy has limits of liability less than the minimum limits specified in the Financial Responsibility Law of the state in which the accident occurs, then the policy to which this endorsement is attached shall apply only as excess insurance for the difference between said minimum limits and the limits under said other policy."

It is the contention of Universal that its policy is not "other collectible insurance" as its policy did not extend coverage to Ruane as he had an "automobile liability insurance policy of his own" issued by State Farm affording him both "primary and excess coverage" in an amount at least equal to the Financial Responsibility Laws of the State of Maryland.

This provision, specifically limiting coverage to persons

having no automobile liability insurance or insufficient limits under applicable financial responsibility laws is generally termed either as the "Limited Additional Insured (L.A.I. provision)," or the "limited Coverage for Certain Insureds" provision. State Farm has characterized this clause as an "escape clause"; however, the Court is of the view that it is in reality "no liability" or an "exclusion" or a "limited additional interest" clause, and even if an "escape clause" the result reached would be the same.

Counsel for State Farm and Universal have submitted helpful briefs in support of their respective contentions. State Farm contends that *Zurich Insurance Company v. Continental Casualty Company, et. al.*, 239 Md. 421, 212 A. 2d 96 (1965) is determinative of the present controversy. There, Brockway Motor Trucks, a used-truck dealer, provided a truck to Delta Chemical Company, in connection with its sale for the purpose of a test drive. While in Delta's possession and being driven by its employee, Galloway, it collided with Burke. Continental Casualty Company, the automobile liability insurer of Delta Chemical, settled the claim of Burke and brought suit against Zurich Insurance Company, the automobile liability insurer of Brockway, for reimbursement claiming the latter was the primary carrier. An examination of the insurance policies issued by Zurich and Continental disclosed substantially identical provisions; however, the policy of Zurich specifically included both Delta Chemical Company and Galloway in its definition of insured. There, the Zurich policy provided:

"III. *Definition of Insured.*

The unqualified word 'insured' includes the named insured, and also includes . . . any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission . . . ."

The Court of Appeals concluded that, under the provisions of the policies in that case, Zurich was the primary

insurance carrier as Galloway was an insured under its policy. It is apparent that the definition of "insureds" in the Universal policy is quite different than that in the Zurich policy.

As of this date, there has been no opinion of the Court of Appeals of Maryland specifically considering the issue herein involved; however, there have been nisi prius opinions brought to the Court's attention bearing on this controversy. In 1969, in a cause entitled *State Farm Mutual Automobile Insurance Company v. Great American Insurance Company of New York, et al.*, (Superior Court of Baltimore City, Docket 1968, page 559, Case No. 111592), Judge Harris, relying principally on the *Zurich Insurance Company* case, supra, on facts and policies similar to those in the instant case, held the garage liability policy issued by Great American was primary on the basis that an excess clause is to be given effect where it conflicts with an "escape clause." Since that decision, however, the Court of Appeals has had occasion to comment upon escape clauses in automobile liability policies.

In *Liberty Mutual Insurance Company v. State Farm Automobile Insurance Company*, 262 Md. 305, 277 A. 2d 603 (1971), in discussing an "escape" clause, the Court extensively quoted with approval the Florida decision of *Continental Casualty Company v. Weekes*, (Fla., 1954) 74 So. 2d 367. In that case, Continental insured the owner-lessor of an automobile and its policy specifically provided:

"(b) The insurance does not apply:

. . . (4) to any liability for such loss as is covered on a primary, contributory, excess or any other basis by insurance in any other insurance company." (p. 367)

The driver lessee of the automobile had an automobile policy issued by Aetna Casualty Company extending coverage while driving other automobiles and specifically provided, that it "shall be excess insurance over any other valid and collectible insurance." The Florida Supreme Court held the clause in the Continental policy was valid and was

to be given effect, and that it conflicted with no public policy or financial responsibility law.

Likewise, the Court of Appeals in *Liberty Mutual Insurance Co.*, case, supra, cited *Allstate Insurance Company v. Shelby Mutual Insurance Company*, 269 N. C. 341, 152 S.E.2d 436 (1967) and *Government Employees Insurance Company v. Globe Indemnity Company* (Ky., 1967) 415 S.W.2d 581, which reached the same result as the *Weekes* case on similar policy provisions where automobile dealers provided automobiles to customers.

Counsel for Universal, in addition to the above authorities, refers the Court to *Government Employees Insurance Company v. Lumbermen's Mutual Casualty Company*, 269 N. C. 354, 152 S.E.2d 445 (1967); *Indiana Lumbermens Mutual Insurance Company v. Mitchell* (C.A. & (Ill.) 1969) 409 F. 2d 392; *Davis v. DeFrank*, 33 A.D.2d 236, 306 N.Y.S.2d 827 (1970), and numerous other authorities supporting the construction reached in this opinion.

Of these authorities, this Court believes that the recent decision of the Supreme Court of Missouri in *State Farm Mutual Automobile Insurance Company v. Western Casualty and Surety Company*, (Mo. 1972) 477 S.W.2d 421, accurately expresses language appropriate to the case at bar.

> "Where a 'no liability' clause expressly provides that its insurance does not apply to any loss covered by 'other valid and collectible insurance, whether primary, excess or contingent,' numerous authorities have held that the insurance company whose policy contains such clause will be absolved from liability in a case where the other policy contains what is designated as an 'excess clause.' The rationale for such holding is that the insurer whose policy contains a specific 'no liability' clause anticipated the possibility of the existence of an 'excess' clause in the policy of a customer of the garage and expressly contracted against liability in that situation. The language of the policy seems to be clear and explicit that the premium reduction in

the garage liability policy was predicated upon the excluded risks enumerated. Effect should be given to that language and when that is done, the reason is that Western is not liable. . . ." (p. 427)

The result obtained in the *Weekes* case and others cited by Universal, has also been obtained in recent *nisi prius* Maryland decisions. In *Criterion Insurance Company, et al. v. Thompson Motor Sales, Inc., et al.,* (Circuit Court for Baltimore County, Docket 92, Folio 265, Case No. 79551) Judge Jenifer, when considering identical provisions contained in policies issued by Criterion Insurance Company and Universal Underwriters Insurance Company, concluded that the Universal policy did not provide coverage to the driver of the automobile when she was driving a "courtesy car" owned by Thompson Motor Sales, Inc. which had been loaned to her during negotiations for the purchase of a new car. Judge Parker in *Nationwide Mutual Insurance Company v. Ohio Casualty Insurance Company and Universal Underwriters Insurance Company* (Circuit Court for Prince George's County, *Law No. 50,349*), likewise concluded the driver of an automobile owned by Otho Williams Buick, Inc. was not covered by the latter's Garage Liability Policy when provided with a "courtesy car" during the repair of his automobile. In that case, Judge Parker ruled the driver's insurance company, Nationwide Mutual Insurance Company, was the only insurance company having any responsibility to the driver for the payment of damages to the injured third-person.

Since argument of the instant case, the Court has learned that Judge Ridgley P. Melvin, Jr., in *State Farm Mutual Automobile Insurance Company v. Universal Underwriters Insurance Company* (Circuit Court for Anne Arundel County, Equity No. 20,278), considered similar policies and virtually identical circumstances as those in this case and held the driver in that case was afforded no coverage by the policy issued by Universal to its insured, Archway Motors, Inc., and that the only coverage was that afforded State Farm Mutual Automobile Insurance Company under the driver's policy.

To reach the result sought by State Farm Mutual in the instant case would require the Court to rewrite the contract between Park Circle and Universal, and to find coverage where none exists unless an unnatural construction is given to the plain and normal meaning of the policies of insurance. It is undenied that Universal took into consideration the possible existence of other automobile insurance, excess as well as primary by customers at the time it issued its policy · to Park Circle. According to the uncontradicted testimony of Phil R. Phillips, Regional Underwriter for Universal Underwriters Insurance Company, this factor was considered by Universal in its premium charged to Park Circle and resulted in a rate reduction. Additionally, he testified Universal's policies ` were submitted to the Commissioner of Insurance of the State of Maryland, when it sought approval for the precise coverage provided and that they were approved. That State Farm was aware that its insured, Ruane would be operating other automobiles and that its coverage would extend to such automobiles is obvious from the inclusion of coverage during such circumstances. *State Farm Mutual Automobile Insurance Company v. Western Casualty and Surety Company,* supra, pages 423, 427.

For the reasons stated, it is concluded the policy issued by Universal to Park Circle does not provide any coverage to Ruane for the automobile accident occurring on March 19, 1969, and that the liability for coverage to Ruane for this accident is that of State Farm. An appropriate declaratory Order or Decree will be signed, when presented, in conformity with this opinion.

/s/  Joseph L. Carter
JOSEPH L. CARTER          JUDGE

Filed:    April 5, 1973