## Donegal Mutual Ins. Co. v. National Dealer Services, Inc.

*Judith L. White,* for plaintiff
*David C. Keiter,* for defendant.

ECKMAN, *J.,* July 26, 1983—On October 19, 1982, petitioner, Donegal Mutual Insurance Com-

pany (hereafter "Donegal"), filed a petition for declaratory judgment against respondent, National Dealer Services, Inc. (hereafter "NDS"), pursuant to the declaratory judgments act,* requesting the court to construe two insurance policies. Donegal then filed a motion for judgment on the pleadings on June 17, 1983. Briefs having been submitted by the parties, the Motion is presently before the court for disposition.

Judgment on the pleadings may be entered only in clear cases where there are no issues of fact and only where the moving party's right to prevail is so certain that a trial would be a fruitless exercise. Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776 (1951); Leidy v. Deseret Enterprises, Inc., 252 Pa. Super. 162, 381 A. 2d 164 (1977). In deciding whether to enter a judgment on the pleadings, the court is required to consider only the pleadings themselves and any documents properly attached thereto. Moreover, the court should view the pleadings and the inferences therefrom in the light most favorable to the party opposing the motion. Thomas Merton Center v. Rockwell International Corp., 280 Pa. Super. 213, 421 A. 2d 688 (1980). Finally, a judgment on the pleadings may be entered in a declaratory judgment action. See Pennsylvania Public Utility Commission Bar Association v. Thornburgh, 62 Pa. Commw. 88, 434 A. 2d 1327 (1981), aff'd per curiam, 498 Pa. 589, 450 A. 2d 613 (1982); Singer v. Sheppard, 33 Pa. Commw. 276, 381 A. 2d 1007 (1978).

The relevant facts are not in dispute. On December 9, 1976, while Thomas Burger was driving an automobile owned by Autohaus Porsche-Audi,

---

*Act of July 9, 1976, P.L. 586, No. 142, §2; 42 Pa.C.S.A. §7531 et seq.

Inc. (hereafter "Autohaus"), he was involved in a collision, which resulted in damages to the automobile in the amount of $4,769.25. At the time of the accident, Mr. Burger was renting the automobile from Autohaus while his own vehicle was being repaired. Autohaus commenced suit against Mr. Burger on January 5, 1979, seeking to recover the damages to the automobile. That action is still pending and awaits resolution of the instant declaratory judgment action between Donegal and NDS, the real parties in interest. Donegal is Mr. Burger's automobile insurance carrier and Autohaus is insured by NDS.

The only issue now before the court involves an interpretation of the insurance policies issued by Donegal and NDS so that a determination may be made as to which insurer is obligated to pay for the damages to the vehicle. It is well settled that the interpretation of an insurance policy involves a question of law for the court. Contrisciane v. Utica Mutual Insurance Co.,_____Pa. Super._____, 459 A. 2d 358 (1983).

Part III of the policy issued to Mr. Burger by Donegal provides coverage for loss caused by collision to the owned automobile or to a non-owned automobile. Nevertheless, the "other insurance" provision contained in Part III states in pertinent part that ". . . the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance." (Petition, Exhibit A, Part III) This type of provision is commonly referred to as an "excess" clause. See United States Fidelity & Guaranty Co. v. Liberty Mutual Insurance Co., 327 F. Supp. 462 (M.D. Pa. 1971); State Automobile Insurance Co. v. Insurance Co. of

North America et al., No. GD 75-16789 (Allegheny County, 1976, unpublished).

The applicable provision of the policy issued to Autohaus by NDS excludes from coverage ". . . any LOSS when there is any other insurance which would apply thereto in the absence of this insurance." (Petition, Exhibit B, Part III(p)) In addition, the policy issued by NDS does not provide coverage when the person using the automobile is someone other than the insured, unless such other person is not insured under any other policy of insurance applicable to the loss (Petition, Exhibit B, Part III(v)). These clauses are generally designed as "escape" provisions. See United States Fidelity & Guaranty Co. v. Liberty Mutual Insurance Co., supra; State Automobile Mutual Insurance Co. v. Insurance Co. of North America, supra.

Donegal contends that the excess provision in its policy and the escape clause in the NDS policy are mutually repugnant and thus should be disregarded. Donegal therefore suggests that each carrier be held responsible for covering one-half of the loss.

It is the position of NDS that the court should give effect to the "escape" clause, rather than disregard the provisions. NDS contends that its clause is more appropriately referred to as a "super-escape" clause in that it provides coverage only in the event that there is no other applicable insurance. Claiming that Mr. Burger was covered by Donegal at the time of the accident, NDS maintains that the clauses are not mutually repugnant and that Donegal should be required to cover the entire loss.

Since there appear to be no Pennsylvania appellate decisions which have resolved this conflict between excess and escape clauses, we look to lower court and federal court opinions for guidance.

Donegal relies primarily on State Automobile Mutual Insurance Co. v. Insurance Co. of North America, supra, for its position that the carriers should each be held responsible for one-half of the loss. In addition to being factually similar to the instant case, State Automobile also dealt with the conflict between an excess clause and an escape clause. The operator's policy contained the following excess provision, which is identical to that included in Donegal's policy: ". . . the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance." The automobile owner's policy included an escape clause, similar to that set forth in the NDS policy, providing that "if there is other valid and collectible insurance, whether primary, excess or contingent . . . no damages are collectible under this policy." State Automobile, supra, at p. 2.

The court in State Automobile examined decisions from other jurisdictions and noted that there are three alternative solutions to the problem created by "other insurance" provisions.

Some courts have given effect to the policies containing escape clauses, explaining that the absence of other valid and collectible insurance is a condition precedent to coverage under the policies. Strictly construing the escape clauses, these courts conclude that since there is excess insurance available under another policy, the policy with the escape clause is inapplicable to the loss. See, e.g., Indiana Lumbermens Mutual Insurance Co. v. Mitchell, 285 F. Supp. 969 (E.D. Ill. 1968), aff'd, 409 F.2d 392 (7th Cir. 1969); State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co., 270 Md. 591, 312 A. 2d 265 (1973).

Other courts have favored the excess clauses, noting that as far as the escape clause is concerned, the policy providing only excess insurance does not in fact provide other valid and collectible insurance. See, e.g., Travelers Indemnity Co. v. National Indemnity Co., 292 F.2d 214 (8th Cir. 1961); Federal Insurance Co. v. Prestemon, 278 Minn. 218, 153 N.W. 2d 429 (1967). Also, in Travelers Indemnity Co. v. United States Fidelity & Guaranty Co., 72 Lack. Jur. 143 (1971), the court found that the excess clause predominates over the escape clause, since the excess coverage policy is not available to the insured until the primary policy has been exhausted. Furthermore, it has been held that the general escape clause must yield to the more specific excess clause. See Trinity Universal Insurance Co. v. General Accident, Fire & Life Assurance Corp., 138 Ohio St. 488, 35 N.E. 2d 836 (1941).

A third group of jurisdictions have prorated the loss according to the primary limits of each policy. The rationale advanced by these courts is that the excess and escape clauses are mutually repugnant and thus should be disregarded. See, e.g., United States Fidelity & Guaranty Co. v. Liberty Mutual Insurance Co., 327 F. Supp. 462 (M.D. Pa. 1971); Hardware Dealers Mutual Fire Insurance Co. v. Farmers Insurance Exchange, 444 S.W. 2d 583 (Texas, 1969); Donegal Mutual Insurance Co. v. Transamerica Insurance Co., 62 D. & C. 2d 374 (1973).

After analyzing each of these approaches, the court in State Automobile Mutual Insurance Co. v. Insurance Co. of North America, supra, concluded that

Where, as here, two policies of insurance cover a single insured for the same risk and each policy seeks avoidance of coverage either by way of an

'excess' or 'escape' or 'no-liability' clause, such clauses are of no effect and both policies are primary policies of insurance in which they share the loss equally up to the limits of their liability. Id. at p. 6. In a similar situation in Donegal Mutual Insurance Co. v. Transamerica Insurance Co., supra, the court noted that the "other insurance" provisions could not be completely reconciled and then concluded that ". . . the most rational solution is to divide the loss equally between" the insurers. 62 D. & C. 2d at p. 381.

Contending that its escape clause should be given effect and that Donegal is obligated to cover the loss, NDS relies on Cunningham v. Holbert's Porsche-Audi, Inc. et al., 32 Bucks Co. L. Rep. 268 (1978), aff'd mem., 296 Pa. Super. 596, 438 A. 2d 654 (1981). Although the factual situation in Cunningham is similar to the facts in the instant case, we do not believe that the decision is apposite.

The central issue in Cunningham was whether the driver's insurance carrier or the owner's insurer was obligated to defend the driver in a lawsuit commenced against him by the owner of the automobile. The driver was insured by Erie Insurance Exchange (hereafter "Erie"), which refused to defend him on the basis of an excess provision in its policy. The Erie policy provided excess coverage to the driver on a temporary substitute or non-owned automobile unless there was no other insurance, in which case the policy provided primary coverage.

The owner's policy, issued by Harleysville Mutual Insurance Company, limited collision coverage to its own insured and did not provide protection to the driver of the automobile. The court in Cunningham therefore concluded that since there was no other insurance available to the driver, Erie was obligated, under the explicit terms of its policy,

to defend its insured in the lawsuit initiated against him by the owner of the automobile.

We note that the court in Cunningham was not confronted with the task of resolving the conflict between an excess clause and an escape clause. Rather, the court found the owner's policy inapplicable on the basis that it did not provide coverage to the driver. On the contrary, however, the terms of the NDS policy clearly provide coverage to Mr. Burger, if there is no other applicable insurance.

Furthermore, in Cunningham, the court was concerned only with the duty to defend and did not address the instant issue pertaining to collision coverage. We believe that this is a significant limitation on the Cunningham decision, especially since the court explained that under the peculiar facts of the case, the only sensible result was to require Erie to defend its insured. In so holding, the court noted that it would have been absurd to place the owner's insurer in the position of suing on behalf of the owner and then defending the same lawsuit.

We will now examine the "other insurance" provisions in the Donegal and NDS policies so that we may determine which of the three approaches taken by the various jurisdictions is most appropriate in this case.

Viewing the situation from the standpoint of Mr. Burger, we note that if he looks to Donegal for coverage, he finds that Donegal is obligated to pay only the amounts in excess of other valid and collectible insurance. If Mr. Burger then attempts to obtain primary coverage from NDS, he learns that NDS is relieved of its obligations since he was covered by Donegal at the time of the accident. If Mr. Burger then pursues Donegal, he finds that be-

cause there has been no primary amount forthcoming from NDS, Donegal's coverage obligations have not been triggered.

It is not disputed that in the absence of the other, either insurer would be obligated to cover the entire loss. The insurers also agree that Mr. Burger is entitled to coverage. As we noted, however, a careful examination of the provisions demonstrates that if both are given full effect, neither insurer is responsible for the loss. Since we are unable to reconcile the mutually exclusive "other insurance" provisions and we fail to see any reason for favoring one of the policies over the other, we conclude that the only fair and reasonable solution is to disregard the clauses and require each carrier to cover one-half of the loss.

Accordingly, we enter the following

### ORDER

And now, July 26, 1983, in this declaratory judgment action, the motion filed by petitioner, Donegal Mutual Insurance Company, for judgment on the pleadings against respondent, National Dealer Services, Inc., is hereby granted. Petitioner and respondent are ordered to share the loss of $4,769.25 equally up to the limits of their respective policy liability.