GRAU v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket Nos. 81230, 81231. Submitted June 11, 1985, at Grand Rapids.
—Decided December 17, 1985.

Plaintiff, Carole L. Grau, was disabled after an automobile acci-
dent. Defendant Detroit Automobile Inter-Insurance Exchange
(DAIIE) was the no-fault insurer for her automobile. She was
employed by defendant Grand Rapids Board of Education
(Board) which provided her with disability insurance. Plaintiff
filed an action for declaratory judgment in Kent Circuit Court
seeking a determination of her rights to insurance benefits
from both defendants after both defendants set off an amount
which plaintiff recovered as Social Security disability benefits
from their respective benefit payments to the plaintiff. The
circuit court, Robert A. Benson, J., ordered the defendants to
prorate a single setoff for plaintiff's Social Security disability
benefits. Defendants appealed and plaintiff cross-appealed. The
Court of Appeals consolidated the appeals. *Held:*

1. The circuit court did not err in determining that plaintiff's
action against the Board was not barred by her failure to
pursue internal grievance procedures under the collective bar-
gaining agreement and in allowing plaintiff to proceed with the
action for delaratory judgment to determine the respective
rights of the parties.

2. The setoff of plaintiff's Social Security disability benefits by
DAIIE and the Board did not amount to a "double setoff"
depriving plaintiff of full benefits. Rather, plaintiff is merely

REFERENCES

Am Jur 2d, Automobile Insurance § 368.

Am Jur 2d, Contracts §§ 1-3, 18-30, 241.

Applicability of other insurance benefits exclusion, from coverage of
hospital or health and accident policy, to governmental insurance
benefits to which insured would have been entitled by prior
subscription. 29 ALR4th 361.

Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.

See also the annotations in the ALR3d/4th Quick Index under
Contracts.

precluded from double recovery from no-fault insurance and Social Security benefits, and double recovery from her employer-provided disability insurance and Social Security benefits.

3. Allowing both DAIIE and the Board to set off Social Security disability benefits would not discourage other injured disabled persons from seeking Social Security disability benefits.

Affirmed in part and reversed in part.

1. INSURANCE — NO-FAULT ACT — REDUCTION OF BENEFITS.

The intent of the Legislature in enacting the government benefit setoff provision of the no-fault act was to prevent the payment of no-fault benefits duplicating governmental benefits (MCL 500.3109[1]; MSA 24.13109[1]).

2. CONTRACTS — JUDICIAL CONSTRUCTION — INTENT OF PARTIES.

Where the language of a contract is clear and unambiguous, the language must be held to express the intention of the parties and the court should not search for meanings or indulge in inferences as to the intention of the parties.

3. INSURANCE — NO-FAULT ACT — REDUCTION OF BENEFITS — GOVERNMENT BENEFITS — SETOFF.

The no-fault act provides that government benefits provided or required to be provided must be set off from the personal protection benefits; the phrase "required to be provided" means that an injured person is obliged to use reasonable efforts to obtain benefits that are available from the government; the available government benefits can be set off even if they are not in fact paid, if they are not paid due to a settlement or the failure of the injured person to use reasonable efforts to obtain them (MCL 500.3109[1]; MSA 24.13109[1]).

4. INSURANCE — NO-FAULT ACT — DISABILITY — SOCIAL SECURITY BENEFITS — SETOFF.

Where an injured person receives Social Security disability benefits, wage-loss benefits under no-fault insurance and long-term disability insurance benefits provided by an employer, the no-fault insurer and the long-term disability insurer, if the disability insurance contract has a setoff provision for Social Security benefits, can both set off the amount the injured person receives in Social Security benefits (MCL 500.3109[1]; MSA 24.13109[1]).

*Farley & Chase* (by *William R. Farley),* for plaintiff.

*Allaben, Massie, Vander Weyden & Timmer* (by *John J. Timmer*), for Detroit Automobile Inter-Insurance Exchange.

*Miller, Johnson, Snell & Cummiskey* (by *Peter A. Patterson* and *David J. Gass*), for Grand Rapids Board of Education.

Before: GRIBBS, P.J., and CYNAR and P. J. DUGGAN,* JJ.

PER CURIAM. Defendants appeal and plaintiff cross-appeals from a declaratory judgment rendered by the circuit court requiring defendant Detroit Automobile Inter-Insurance Exchange (DAIIE) and defendant Grand Rapids Board of Education (Board) to prorate a single setoff of plaintiff's Social Security disability benefits from DAIIE's payment of no-fault wage-loss benefits and the Board's payment of employee disability benefits to plaintiff. We affirm in part and reverse in part.

The parties stipulated to the following facts:

"The plaintiff, Carole L. Grau, is employed as a music teacher by the defendant, Board of Education of the Grand Rapids Public Schools. On April 14, 1980, while driving her motor vehicle, she was struck by another motor vehicle and sustained injuries. Plaintiff's injuries included injuries to her lower spine which required surgery. As a result of the injuries, plaintiff, from the date of the accident, has been continuously disabled from maintaining her employment as a music teacher, has not maintained other employment and has been disabled as required by definition for full disability benefits in the disability policies of both defendants.

"On December 4, 1981, plaintiff was awarded, after reduction of attorney fees, $5,499.15 for a closed period

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of social security disability. The period was from April, 1980 to October, 1981. [Citation omitted.]

"Defendant, DAIIE, was the automobile no fault carrier for the plaintiff when the collision occurred and was obligated to pay plaintiff no fault benefits for her injuries. [Citation omitted.]

"Defendant, DAIIE, paid plaintiff weekly no fault wage benefits from April, 1980 to March, 1983. However, from November, 1982 to March, 1983, DAIIE deducted $5,499.15 from the wage loss benefits as a result of the social security award. The total amount paid by DAIIE to plaintiff, after deducting the social security award, is $39,063.53. The no fault policy was an uncoordinated policy.

"Defendant Board of Education has, pursuant to a labor contract with the Grand Rapids Education Association, provided long term disability benefits to plaintiff. The Board of Education provides long term disability benefits through a self-insured fund. The terms of the contract are contained in the Agreement between the Board of Education of the Grand Rapids Public Schools and the Grand Rapids Education Association September 1, 1977 to August 31, 1980, * * * [and] are also contained in the Memorandum of Understanding Between Grand Rapids Education Association and the Grand Rapids Public School Administrators dated September 1, 1976 * * *. At the time the Complaint was filed, plaintiff was subject to the Agreement between the Board of Education Association and the Grand Rapids Public Schools 1982-1984. [Citation omitted.]

"Defendant Board of Education has made disability payments to the plaintiff but has reduced payments to deduct $5,499.15 for the social security award. The total amount paid by the Board of Education to plaintiff as disability is $19,748.38.

"Plaintiff did not sign a lien agreement with defendant Board of Education for the social security award."

DAIIE set off plaintiff's Social Security benefits from its wage-loss benefits pursuant to MCL 500.3109(1); MSA 24.13109(1), which specifically provides for setoff of government benefits from no-fault personal protection insurance benefits:

"Benefits provided or required to be provided under the law of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

Similarly, the collective bargaining agreement and Memorandum of Understanding of the agreement, pursuant to which defendant Board set off plaintiff's Social Security benefits from its disability benefits, provided master agreement setoffs for the following income from other sources:

"1. Social Security
"2. Workers' Compensation
"3. Teachers Retirement"

In rendering its decision for plaintiff, the circuit court found that plaintiff was not required to exhaust the internal grievance procedures set forth in the collective bargaining agreement because the presence of DAIIE was required for a resolution of the dispute. It further held that plaintiff's no-fault award for wage-loss benefits from defendant DAIIE and her employee disability award from defendant Board, paid pursuant to the collective bargaining agreement, would be subject to only one setoff of plaintiff's Social Security disability benefits, despite setoff provisions in both the no-fault act and the collective bargaining agreement. Although the action was brought as an action for declaratory relief, the circuit court, as permitted by GCR 1963, 521.6, now MCR 2.605(F), ordered defendants to evenly prorate the setoff between them and entered a judgment for plaintiff against each defendant for half the amount of the setoff.

Defendant Board argues that the circuit court erred in finding that plaintiff was not required to

exhaust the internal grievance procedures under the terms of the collective bargaining agreement prior to bringing her action for declaratory judgment against the Board in circuit court. The collective bargaining agreement contained grievance procedures for resolution of a grievance which was defined in the agreement as a "Claim * * * of improper interpretation or application of this agreement". The Board characterizes plaintiff's action against it as an action for breach of the collective bargaining agreement which, it argues, would fall within the agreement's definition of a grievance. Citing various decisions of this Court, the Board contends that, where a collective bargaining agreement establishes grievance procedures, the employee must attempt to exhaust these procedures before resorting to a judicial remedy, and failure to do so bars the employee's claim. See *e.g., Baker v Detroit,* 73 Mich App 67; 250 NW2d 543 (1976); *Grosse Pointe Farms Police Officers Ass'n v Howlett,* 53 Mich App 173; 218 NW2d 801 (1974), *lv den* 392 Mich 783 (1974); *Barry v Flint Fire Dep't,* 44 Mich App 602; 205 NW2d 627 (1973). However, we agree with the circuit court that the case at bar involves more than the interpretation of the collective bargaining agreement, it involves interpretation of the no-fault act setoff provision in conjunction with the collective bargaining agreement setoff provision. The declaration of the rights of the parties involved and a complete resolution of this matter could not be had through an action for declaratory judgment against DAIIE and separate grievance procedures instituted against the Board. Thus the circuit court did not err in determining that plaintiff's action against the Board was not barred by her failure to pursue internal grievance procedures under the collective bargaining agreement and in

allowing her to proceed with the action for declaratory judgment to determine the respective rights of the parties.

Both defendant DAIIE and defendant Board further argue that the circuit court erred in holding that defendants were required to prorate their Social Security setoffs, each retaining only half of the setoff. In refusing to set off plaintiff's Social Security benefits from both DAIIE and the Board, the court found that the Legislature intended plaintiff to receive $44,562.68 ($39,063.53 in no-fault benefits plus $5,499.15 in Social Security benefits) and that the intent of the collective bargaining agreement was for plaintiff to receive $25,247.53 ($19,748.38 in disability benefits plus $5,499.15 in Social Security benefits), thus rendering an intended total of $69,810.21. A setoff of Social Security benefits from both no-fault benefits and employee disability benefits, the court reasoned, would only provide plaintiff with $64,311.06 in benefits, $5,499.15 below the intended total. The court thus viewed Social Security benefit setoffs from both the no-fault and employee disability benefits as a "double setoff" depriving plaintiff of the full benefits to which she was entitled.

The circuit court also analogized the case at bar to "other insurance" clause cases. See *e.g., Federal Kemper Ins Co, Inc v Health Insurance Administration, Inc,* 135 Mich App 76; 351 NW2d 900 (1984); *Farm Bureau Mutual Ins Co v Horace Mann Ins Co,* 131 Mich App 98; 345 NW2d 655 (1983), *lv den* 419 Mich 880 (1984); see also *Mary Free Bed Hospital & Rehabilitation Center v Insurance Co of North America,* 131 Mich App 105; 345 NW2d 658 (1983), *lv den* 419 Mich 943 (1984). In those cases the injured party was insured by two insurance policies, each of which contained "other insurance" clauses which escaped or pro-

rated insurer liability when the insured was covered by other insurance. This Court held that the intractable conflicts created by such clauses should be resolved by prorating the overlapping coverages. *Mary Free Bed Hospital & Rehabilitation Center, supra.* Utilizing this approach in the case at bar, the circuit court ordered defendants to evenly prorate their setoffs of plaintiff's Social Security disability benefits.

We disagree with the circuit court's analogy to "other insurance" clause cases and its characterization of DAIIE's and the Board's setoff of Social Security disability benefits as a "double setoff" depriving plaintiff of funds to which she was entitled. The instant case does not involve two insurance contracts containing intractable conflicting clauses seeking to minimize coverage of the insured. The instant case involves a statutory no-fault setoff and a bargained-for contractual setoff which do not set off each other's benefits, but merely set off a third benefit provided by the government.

Moreover, the intent of the Legislature in enacting the government benefit setoff provision of the no-fault act was to prevent the payment of no-fault benefits duplicating governmental benefits. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544-546; 273 NW2d 829 (1979), *app dis* 444 US 803; 100 S Ct 22; 62 L Ed 2d 16 (1979); see *Tebo v Havlik,* 418 Mich 350, 367; 343 NW2d 181 (1984). It was not, as the circuit court presumed, enacted to provide plaintiff with a certain amount of benefits. Furthermore, the circuit court should not have construed the collective bargaining agreement as intending to provide plaintiff with a certain amount of benefits. The collective bargaining agreement did not express such an intent. Instead it clearly called for the

setoff of Social Security benefits from employment disability benefits. Where the language of a contract is clear and unambiguous, the language must be held to express the intention of the parties and the court should not search for meanings or indulge in inferences as to the intention of the parties. *DeVries v Brydges,* 57 Mich App 36, 41; 225 NW2d 195 (1974), and cases cited therein.

Moreover, the setoff of Social Security benefits by DAIIE and the Board does not amount to a "double setoff" depriving plaintiff of benefits. Rather, plaintiff is being precluded from double recovery from no-fault insurance and Social Security disability benefits, and double recovery from the bargained-for employee disability benefits and Social Security disability benefits. Indeed, she is already receiving duplicate benefits for wage-loss due to disability from her no-fault insurer and her employer.[1]

Finally, plaintiff's contention that allowing both DAIIE and the Board to set off Social Security disability benefits would discourage injured disabled parties from seeking Social Security disability benefits has little merit. MCL 500.3109(1); MSA 24.13109(1) provides that government benefits "provided or *required to be provided*" must be set off from the personal protection insurance benefits. The phrase "required to be provided" means that an injured person is obliged to use reasonable efforts to obtain benefits that are available from the government. The available government benefits can be set off even if they are not in fact paid if they are not paid due to a settlement or the failure of the injured person to use reasonable efforts to obtain them. See *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 643-646,

---

[1] Duplicate coverage by private insurance benefits is not prohibited by MCL 500.3109(1); MSA 24.13109(1). See *O'Donnell, supra,* p 550.

651; 344 NW2d 773 (1984) (workers' compensation benefits); *Deppmeier v Associated Truck Lines, Inc,* 143 Mich App 244, 247; 372 NW2d 521 (1984) (workers' compensation benefits); but see OAG, 1981-1982, No. 6111, p 772 (December 13, 1982) (Social Security disability benefits not set off unless received). In addition, the Memorandum of Understanding of the collective bargaining agreement of September 1, 1976, which the parties have stipulated contains the terms of the contract, expressly provides in its setoff provision that "Each disabled employee upon becoming eligible for social security and/or retirement must concurrently make application for those benefits".

Thus we reverse the circuit court's judgment against the defendants. Each defendant is entitled to a full setoff of the Social Secutity benefits received by plaintiff.

Affirmed in part and reversed in part.